UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KAREN COOK** <br> *Plaintiff* <br><br> **VERSUS** <br><br> **WHELAN SECURITY CO. d/b/a** <br> **GARDA WORLD SECURITY CORP.** <br> *Defendant* | * CIVIL ACTION NO.: _____ <br> * <br> * New Orleans, Louisiana <br> * <br> * <br> * <br> * <br> * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW INTO COURT**, through the undersigned counsel, comes Plaintiff, Karen Cook, who respectfully submits the following Original Petition for Damages and who avers the following.

## I. THE PARTIES

### A. Plaintiff

1. Karen Cook, an individual of full age and majority, who is domiciled in St. John the Baptist Parish in the State of Louisiana.

### B. Defendant

2. On information and belief, Whelan Security Co. d/b/a Garda World Security Corporation (hereinafter "Garda World"), a foreign company, which has its principle place of business at 1699 S. Hanley Road, Suite 350, St. Louis, Missouri, 63144.

3. On information and belief, Whelan Security Co. d/b/a Garda World, does business in the State of Louisiana

1

## II. JURISDICTION AND VENUE

4. This is an action for discrimination and/or retaliation arising under Title VII of the Civil Rights Act of 1964. This court has subject matter jurisdiction in this action pursuant to 28 U.S.C. 1331 and 1332(a).

5. Venue is proper in this District under 28 U.S.C. 1391(b) because the actions and omissions giving rise to Plaintiff's allegations occurred in the Eastern District of Louisiana and the Defendant does business in the Eastern District of Louisiana.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff has Exhausted all Administrative Remedies and obtained a Right-to-Sue Letter from the Equal Employment Opportunity Commission ("EEOC"). This suit is timely, filed within 90 days of receipt of the Right-to-Sue Letter.

## IV. FACTUAL ALLEGATIONS

7. Paragraphs 1 through 6 are incorporated herein by reference.

8. Plaintiff, Karen Cook, started working as a Security Guard on October 13, 2013 at Garda World.

9. Garda World provided contract security solutions to any business that retains their services. Garda World offers a multitude of security services from physical security, security products and crisis management services.

10. Plaintiff had a starting pay was $10.50 an hour when first employed with Defendant, Garda World as a security guard.

11. Plaintiff was assigned to work at Archer-Daniels-Midland Grain in Reserve, Louisiana, providing contracted security services for the grain elevator.

12. On or about June 12, 2019, the grain elevator suffered significant damage

when a third party owned vessel struck the elevator and an ADM chartered vessel.

13. The damage caused from the collision was going to require the facility be shut down for up to eight months while repairs were made to the grain elevator.

14. After the collision and announced shutdown, Plaintiff received her first schedule and noticed she was scheduled to work two days for the following week at the ADM location in Ama, Louisiana.

15. Plaintiff, having been employed with Garda World during prior shutdowns of job locations, called the Client Service Manager, Penny Matthew, on June 14, 2019 and inquired about a prior procedure where workers were allowed to claim unemployment while the shutdown was ongoing. Ms. Matthew stated she would call Plaintiff back after speaking with Human Resources.

16. Later in the day on June 14, 2019, Plaintiff was contacted and informed by the General Manager, Pete Wypyszinski, that prior shutdown procedure would not be used for the ADM Reserve shutdown and that Plaintiff would be noted as having refused to work.

17. After the call from Mr. Wypyszinski, Plaintiff immediately contacted Penny Matthew, who was in charge of creating the schedules for Garda World, and left a voice message that she would like to be placed on the schedule since the company would not be considering the ADM Reserve eight-month closure a shutdown.

18. Plaintiff then received a call from the Project Manager of ADM Reserve, telling her that the General Manager had sent him an email stating that Ms. Matthews had taken Plaintiff off of the schedule since Plaintiff had "cursed

her out."

19. Plaintiff was eventually placed back on the schedule after several calls between management individuals from ADM Reserve and the head office management.

20. On or about July 16, 2019, Plaintiff spoke with the Client Service Manager, Penny Matthew, about the Project Manager Position.

21. Plaintiff was told by Ms. Matthew that she could be interviewed on the 18th of July for the position, but that the interview would be conducted by the General Manager rather than by the Client Service Manager.

21. Plaintiff, concerned that there might be some misunderstanding between her and Ms. Matthews stated she wanted to "clear the air" since they would be in the office together for 10 hours on the 18th.

22. Plaintiff went on to discuss the email that was sent to the Project Manager stating that Plaintiff was taken off the schedule due to cursing out Ms. Matthews.

23. Ms. Matthews stated to Plaintiff that the General Manager did not like Plaintiff and sent the email from Ms. Matthews account without notifying her or carbon copying her on the same.

24. Plaintiff participated in the interview process on July 18, 2019 with the General Manager, Pete Wysypniski.

25. On July 26, 2019, the General Manager, Pete Wysypniski and Formal Security Officer, Nathan Bankston, formally communicated to Plaintiff that she had obtained the project manager position at the Ama, Louisiana office.

26. On or about July 26, 2019, the General Manager, Pete Wysypniski, demanded

4

that Plaintiff cut off all communication with the prior management team for ADM Reserve and should not discuss the pay rates for the position with any other employee. Plaintiff was also told that she would be on probation for ninety (90) days.

27. On the same date, another employee of ADM told Plaintiff that the General Manager had promised the position to another employee and was communicating to other individuals that he did not think Plaintiff was the person who should be in the position.

28. On or about August 1, 2019, Plaintiff started the position as project manager for the ADM facility at a pay rate of $21.50 per hour.

29. Plaintiff did not receive any formal training for the project manager position from management.

30. On or about August 22, 2019, after obtaining the Project Manger position, Plaintiff was told by Ms. Matthews that she should email the employees of ADM Reserve to state that the new project managers did not know there jobs and would like feedback from the employees.

31. Between August 22, 2019 and September 5, 2019, Plaintiff was told that employees were complaining that Plaintiff had received the project manager position.

32. On or about September 10, 2019, Plaintiff contacted Human Resources to complain about the hostile work environment that had been evolving and was told that all such complains were anonymous even though employees would have to provide their personal information.

32. On or about September 13, 2019, Plaintiff contacted the branch manager to

5

discuss the issues with her position and the lack of assistance she was receiving even after requesting assistance.

33. On or about September 27, 2019, Plaintiff was contacted by the General Manager, Pete Wysypniski, and the Client Service Manager, Penny Matthew, and was told that she should not have contacted the branch manager with her complaints.

34. Plaintiff was immediately demoted from her position and her pay was returned to $10.50 per hour, but was not placed on the following schedule.

35. Plaintiff was fired shortly afterwards for "starting arguments with other employees" of Garda World contrary to the fact that there were no arguments between Plaintiff and another co-worker.

36. Plaintiff had never been subjected to any write-ups at her employment.

## V. First Cause of Action: Discrimination/Retaliation in Violation of Title VII of the Civil Rights Act of 1964.

37. Paragraphs one through 1 through 36 are incorporated herein by reference.

38. Plaintiff was subjected to discrimination, including harassment and/or retaliation for engaging in a "protected activity."

39. Specifically, Plaintiff was demoted and subsequently fired for communicating with a supervisor or manager about employment discrimination, including harassment.

40. Further, Plaintiff was subjected to discipline for engaging in communications with co-workers about salary information.

41. Plaintiff was subjected to discrimination and/or retaliation when she was not provided training for her new position after she made several requests.

42. Defendants named employees intended to demote and/or fire Plaintiff for any reason they could obtain after she filed a supposedly anonymous complaint with human resources about the hostile work environment that had been present at her employment after she received the project manager position.

43. Defendants engaged in retaliation against Plaintiff by spreading rumors about Plaintiff that she was "toxic and unbearable" to work with and would frequently state to others that she would curse other employees out.

## VI. Prayer for Relief

WHEREFORE, Plaintiff requests that the Defendant be held liable for violating Title VII of the Civil Rights Act of 1964 for discriminatory practices and/or retaliation. Plaintiff further requests that this Court enter an Order that:

   a) Declares that the Defendants discriminatory and/or retaliator practices violated Title VII of the Civil Rights Act of 1964.

   b) Enjoins Defendant, his agents, employees, and Successors, and all other persons in the active concert or participation with Defendant from:
      i. Discriminating or retaliating against employees on the basis of engaging in protected activities.
      ii. Interfering with or threatening to take any action against any person engaged in the exercise or enjoyment of rights granted or protected by the Equal Employment Opportunity Act and/or Civil Rights Act of 1964.
      iii. Failing or refusing to take such affirmative steps as may

     be necessary to restore, as nearly as practicable, the victims of the Defendant's past unlawful practices to the position they would have been in but for the discriminatory conduct; and,

   iv. Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, as nearly as practicable, the effects of the Defendant's unlawful practices.

 c) Awards monetary damages to Plaintiff for being aggrieved of Defendant's discriminatory conduct.

 d) Awards such additional relief as the interests of justice may so require.

## VII. JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedures.

           RESPECTFULLY SUBMITTED,

           _____
           AARON P. MOLLERE (#37232)
           THE LAW OFFICE OF AARON P. MOLLERE
           P.O. Box 247
           Reserve, LA 70084
           Phone: 985.536.8888
           Fax: 985.777.9087
           *apmollere@gmail.com*
           *Attorney for Plaintiff*